Affirmed in part, reversed in part, and remanded by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge HERLONG joined. Judge MICHAEL wrote an opinion concurring in parts I and II of the majority opinion and concurring in the judgment.
OPINION
WILKINSON, Chief Judge.
Cynthia Lissau appeals the grant of summary judgment on her Title VII claims in favor of defendants Cesar Castillero, her former supervisor, and Southern Food Service, her former employer. She alleges that both defendants are liable for a sexually hostile work environment created by Castillero. Lissau maintains that Castillero is liable in his individual capacity for a Title VII violation. She also argues that Southern, as Cas-tillero’s employer, is hable for his misconduct. On the issue of Castillero’s liability, we affirm the grant of summary judgment. Employees are not hable in their individual capacities for Title VII violations. On the issue of Southern’s habihty, we remand for reconsideration in hght of Faragher v. City *179 of Boca Raton, — U.S. -, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and Burlington Industries, Inc. v. Ellerth, — U.S. -, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).
I.
Cynthia Lissau worked as a sales representative for Southern, a company engaged in the distribution and sale of food products. Her period of employment lasted from March 9, 1987, through December 2, 1988, and again from July 26, 1993, through July 19, 1994. Southern is headquartered in North Carolina and maintains several branch sales offices. Lissau worked in the company’s regional office in Roanoke, Virginia.
During her second period of employment, Lissau reported to Castillero, the manager of the Roanoke office. As a manager, Castille-ro could hire and fire sales representatives and give them sales leads. Castillero reported to David Heller, Southern’s Vice President of Marketing, who worked in North Carolina but periodically visited the regional sales offices, including the one in Roanoke.
Lissau alleges that Castillero spoke and acted inappropriately during her second period of employment. First, Castillero allegedly made several provocative statements about Lissau’s appearance and implied a sexual interest in her. These ranged from inquiries about whether Lissau was married to a suggestion that she needed to be “pounded all night long.” Second, Castillero allegedly touched Lissau on several occasions, including her thigh when he reached down to pick up some paper on the floor. Third, Castille-ro allegedly made comments of a sexual nature and behaved inappropriately toward employees other than Lissau.
On Friday June 3, 1994, Castillero called Lissau into his office and inquired whether she was unhappy. Lissau did not voice any concerns at that time. On the following day, Lissau, who was at the office, called Castille-ro at home. She stated that she was upset by his inappropriate comments and requested his assurances that they would cease. Castillero, however, denied all of Lissau’s accusations and replied that Lissau had been the one talking about sex and making comments to him.
Shortly thereafter, Lissau contacted Heller. She told Heller that she had a problem with Castillero and that she had confronted him about it. She did not feel safe elaborating further, and she neither described the problem nor suggested, even as a general matter, that it might involve sexual harassment. In this same conversation, Lissau expressed an interest in becoming a company psychologist, a position that did not exist at Southern, in order to handle problems that she was observing in the Roanoke office. Lissau suggested contacting Mike Nuss-baum, a senior executive at Southern, about her appointment as a company psychologist. Heller told Lissau that he would contact Nussbaum to arrange an interview.
On July 19, 1994, Castillero fired Lissau, explaining that he understood she was unhappy as a salesperson and had applied for another job.
Since 1985, Southern has maintained a written policy that prohibits sexual harassment and designates several employees to whom a worker can bring an allegation of harassment. The policy is included in Southern’s employee handbook and was distributed to the sales forces in all of Southern’s regional offices, including the Roanoke office. Lis-sau’s deposition contains conflicting statements about whether she saw this policy. Additional memoranda sent to the regional offices also discussed Southern’s sexual harassment policy. Lissau did not notify any of Southern’s designated employees or anyone in management about Castillero’s alleged conduct.
Lissau filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in September 1994. According to Southern, it first became aware of Lissau’s allegations when the EEOC notified it of her charge. Upon learning of the charge, Nussbaum referred the matter to the company’s counsel. Counsel investigated the complaint, and, based on its findings, Nuss-baum concluded that Lissau’s allegations were without merit.
*180 Lissau brought Title VII claims against Castillero and Southern and pendent state law claims against Castillero. The district court granted summary judgment to both defendants on the Title VII claims and dismissed the remaining state law claims without prejudice. It held that Castillero was entitled to summary judgment because supervisors are not individually liable under Title VIL The court further held that Southern was entitled to summary judgment because it did not have notice of Castillero’s behavior. While not resolving whether the alleged acts were sufficiently severe or pervasive to create an abusive working environment, the district court did note that the alleged conduct “was not of an egregious nature.” Lissau now appeals.
II.
We first address Lissau’s suit against Castillero. Lissau argues that supervisors are liable in their individual capacities for sexual harassment in violation of Title VII. She contends that Castillero, as her supervisor, was Southern’s agent and thereby fell within Title VII’s definition of an “employer.” We disagree. An analysis of Title VII’s language and its remedial scheme leads us to join the other circuit courts and conclude that supervisors are not liable in their individual capacities for Title VII violations.
Title VII provides, in relevant part, that “[i]t shall be ah unlawful employment practice for an employer ... to discriminate against any individual with respect to his ... terms, conditions, or privileges of employment, because of such individual’s ... sex.” 42 U.S.C. § 2000e-2(a). It defines employer as “a person engaged in an industry affecting commerce who has fifteen or more employees” and “any agent of such a person.” Id. § 2000e(b). The statute does not define the term “agent.”
This court recently interpreted a similar statutory definition of employer. See Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir.1994). In Birkbeck, we addressed whether individual officers and supervisors were liable for violations of the Age Discrimination in Employment Act (ADEA). See 29 U.S.C. § 621. The ADEA defines employer to include certain persons who employ twenty or more workers and “any agent of such a person.” Id. § 630(b). We concluded that the inclusion of “agent” did not signal a congressional desire to impose liability on individual supervisors. Instead, it simply represented “an unremarkable expression of respondeat superior — that discriminatory personnel actions taken by an employer’s agent may create liability for the employer.” Birkbeck, 30 F.3d at 510. We also noted that it would make little sense to hold a single individual liable when Congress had expressly exempted all companies employing fewer than twenty persons from the statute. Id. Accordingly, we rejected the claim of individual liability under the ADEA.
The Title VII definition of employer must be read in the same fashion as the ADEA definition of employer. Title VII defines employer to include certain persons who employ fifteen or more workers and, like the ADEA, “any agent of such a person.” Compare 42 U.S.C. § 2000e(b), with 29 U.S.C. § 630(b); see, also Wathen v. General Elec. Co., 115 F.3d 400, 404 n. 6 (6th Cir.1997) (noting that Title VII and ADEA “define ‘employer’ essentially the same way”); EEOC v. AIC Sec. Investig., Ltd., 55 F.3d 1276, 1280 n. 1 (7th Cir.1995) (noting that the two definitions are “essentially identical”). We already have observed that Title VII is the ADEA’s “closest statutory kin.” Birkbeck, 30 F.3d at 510 (citations omitted). Thus, reading Title VII to foreclose individual liability represents the only logical extension of Birkbeck. Like the ADEA, Title VII exempts small employers; it would be incongruous to hold that Title VII does not apply to the owner of a five-person company but applies with full force to a person who supervises an identical number of employees in a larger company. See id. We interpret the inclusion of agent in Title VII’s definition of employer simply to establish a limit on an employer’s liability for its employees’ actions. See Birkbeck, 30 F.3d at 510-11; Miller v. Maxwell’s Int’l. Inc., 991 F.2d 583, 587 (9th Cir.1993).
The 1991 amendments to Title VII further bolster our conclusion that individuals are not liable under that Act. Prior to 1991, remedies under Title VII were ordinarily *181 limited to back pay and equitable relief such as reinstatement that “typically are only obtainable from an employing entity, not from a mere individual.” AIC, 55 F.3d at 1281 (citation omitted); see also Tomka v. Seiler Corp., 66 F.3d 1295, 1314 (2d Cir.1995). In 1991, Congress added compensatory and punitive damages to the list of available remedies. See Civil Rights Act of 1991, § 102, Pub.L. No. 102-166, 105 Stat. 1071, 1072-73 (codified at 42 U.S.C. § 1981a) (CRA). In the CRA’s findings, Congress noted that “additional remedies under Federal law are needed to deter unlawful harassment and intentional discrimination in the workplace.” Id. § 2, 105 Stat. at 1071. Congress tied the amount of available compensatory and punitive relief to the size of the employer. Id. § 102(b)(3), 105 Stat. at 1073 (codified at 42 U.S.C. § 1981a(b)(3)). For example, companies that employ 200 workers are liable to each complainant for a maximum of $100,000 in compensatory and punitive damages while companies employing 100 workers are liable for a maximum of $50,000. Id. § 102(b)(3)(A)-(B), 105 Stat. at 1073 (codified at 42 U.S.C. § 1981a(b)(3)(A)-(B)). This sliding scale of liability does not stipulate an amount in cases where a plaintiff seeks to hold an individual supervisor liable.
These amendments to the remedial scheme thus suggest that Congress only intended employers to be liable for Title VII violations. Nowhere does the CRA mention individual liability as an available remedy. Had Congress felt that individual liability was “needed to deter unlawful harassment and intentional discrimination,” surely it would have included this remedy in the 1991 Amendments. See Wathen, 115 F.3d at 406; Tomka, 66 F.3d at 1315; Miller, 991 F.2d at 588 n. 2. Instead, the linkage between the size of the employer and the amount of available relief clearly indicates a congressional intent to limit plaintiffs’ remedies to suits against employers. To permit individual liability would improperly expand the remedial scheme crafted by Congress.
Finally, we note that a large number of circuit courts have held that individual supervisors are not liable under Title VII. In fact, every circuit that has confronted this issue since the enactment of the CRA has rejected claims of individual liability. These circuits have founded this conclusion on the language of Title VII and the fact that its remedial scheme seems so plainly tied to employer, rather than individual, liability. See Tomka, 66 F.3d at 1317; Dici v. Pennsylvania, 91 F.3d 542, 552 (3d Cir.1996); Grant v. Lone Star Co., 21 F.3d 649, 653 (5th Cir.1994); Wathen, 115 F.3d at 406; Williams v. Banning, 72 F.3d 552, 554 (7th Cir.1995); Smith v. St. Bernards Regional Medical Ctr., 19 F.3d 1254, 1255 (8th Cir.1994); Miller, 991 F.2d at 588; Haynes v. Williams, 88 F.3d 898, 901 (10th Cir.1996); Smith v. Lomax, 45 F.3d 402, 403 n. 4 (11th Cir.1995); Gary v. Long, 59 F.3d 1391, 1399 (D.C.Cir.1995). We join these courts and reiterate that supervisors are not liable in their individual capacities for Title VII violations. Accordingly, the district court properly granted .summary judgment to Castillero.
III.
We next address Lissau’s claims against Southern. After the parties had argued this issue, the Supreme Court agreed to decide two cases addressing when an employer could be liable for a supervisor’s sexual harassment. See Faragher v. City of Boca Raton, - U.S. -, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); Burlington Indus., Inc. v. Ellerth, - U.S. -, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). We held this appeal in abeyance pending the Supreme Court’s decisions. Now that the Court has decided those cases and announced new criteria on employer liability, we remand this case to the district court to apply those criteria to Lissau’s claims.
The district court granted summary judgment to Southern on the ground that Southern lacked notice of Castillero’s behavior. The Supreme Court has since announced a more complete rule governing an employer’s liability for a supervisor’s sexual harassment. In both Faragher and Ellerth, the Supreme Court articulated the following standard:
An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) *182 authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.
Faragher, 118 S.Ct. at 2292-93 (citation omitted); Ellerth, 118 S.Ct. at 2270 (citation omitted). The Court thus rejected the rule, relied on by the district court, that an employer is liable only if it has notice of a supervisor’s offensive behavior. It reaffirmed, however, the longstanding principle that employers are not “always automatically liable for sexual harassment by their supervisors.” Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 72, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (citation omitted); see Faragher, 118 S.Ct. at 2285; Ellerth, 118 S.Ct. at 2270.
The district court did not have the benefit of these decisions when it granted summary judgment to Southern, and the parties did not conduct discovery with these criteria in mind. Indeed, it appears the parties constructed the record primarily around the earlier rule that an absence of notice afforded absolute immunity to employer liability. Remand will enable the parties to develop a more complete record, and the district court should apply the newly announced criteria to those facts. After the facts are developed in light of Faragher and Ellerth, the district court is free to consider a renewed motion for summary judgment on remand.*
We express no view, however, on the proper disposition of such a motion. After Faragher and Ellerth, Southern may be able to interpose an affirmative defense based on its efforts to prevent and correct harassment in its workplace and Lissau’s failure to take advantage of the opportunities the company afforded her. Faragher and Ellerth make clear that an employer may advance such a defense where no discriminatory tangible employment action was taken. See Faragher, 118 S.Ct. at 2293; Ellerth, 118 S.Ct. at 2270. Tangible employment actions, if not taken for discriminatory reasons, do not vitiate the affirmative defense. If Lissau’s termination did not result from a refusal to submit to Castillero’s sexual harassment, then Southern may advance this defense. Under the defense, evidence that Southern had disseminated an effective anti-harassment policy provides compelling proof of its efforts to prevent workplace harassment. See Faragher, 118 S.Ct. at 2293; Ellerth, 118 S.Ct. at 2270; Meritor, 477 U.S. at 72-73, 106 S.Ct. 2399. And any evidence that Lissau failed to utilize Southern’s complaint procedure “will normally suffice to satisfy [its] burden under the second element of the defense.” Faragher, 118 S.Ct. at 2293; Ellerth, 118 S.Ct. at 2270. If, *183 however, the district court finds no effective anti-harassment policy was in place or that Lissau did avail herself of the policy, then summary judgment would be inappropriate. See Faragher, 118 S.Ct. at 2293 (sexual harassment policy generally necessary except for “employer of a small workforce, who might expect that sufficient care to prevent tortious behavior could be exercised informally”).
Alternatively, the district court may address whether Castillero’s conduct was sufficiently severe and pervasive to constitute discrimination under Title VII. Title VII does not provide a remedy for every instance of verbal or physical harassment in the workplace. Oncale v. Sundowner Offshore Servs., Inc., — U.S. -, -, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998). Relief is unavailable where the alleged conduct “is not severe or pervasive enough to create an objectively hostile or abusive work environment” or where the victim “does not subjectively perceive the environment to be abusive.” Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). “A recurring point in these opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.” Faragher, 118 S.Ct. at 2283 (citation and internal quotation marks omitted). Here the district court observed that Castillero’s behavior “was not of an egregious nature” but declined to decide whether his conduct rose to the level of actionable harassment. If Cas-tillero’s conduct was not severe and pervasive enough to create a hostile work environment or if Lissau did not perceive the environment to be abusive, summary judgment in favor of Southern would be appropriate. See, e.g., Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772-74 (4th Cir.1997) (granting summary judgment to employer where conduct not severe and pervasive); see generally 1 Barbara Lindemann & Paul Grossman, Employment Discrimination Law 805-07 n. 290 (collecting cases). If, on the other hand, the conduct created a discriminatorily abusive work environment (or there is a genuine issue of material fact thereon), then summary judgment for Southern would be inappropriate. See Harris, 510 U.S. at 22, 114 S.Ct. 367.
We identify these issues simply to provide some guidance to the district court on remand. We express no view, however, on whether summary judgment is appropriate on either ground. Until the parties have briefed the issue of Southern’s liability in light of the Supreme Court’s recent decisions and until the district court has reviewed the entire record, it would be premature for us to rule.
IV.
We affirm the grant of summary judgment in favor of Castillero. We reverse the grant of summary judgment in favor of Southern and remand the case for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

 Our concurring colleague declares that "Faragher and Ellerth signal ... that fewer sexual harassment cases will be resolved on summary judgment.” See post at 184. We think this reads too much into Faragher and Ellerth. Those cases in no way indicate that a variation from the normal requirements of Rule 56 is appropriate or that grants of summary judgment will be infrequent. See Faragher, 118 S.Ct. at 2283-84 (noting with approval that the Courts of Appeals have demanded that a supervisor’s conduct must be extreme and citing a collection of cases dismissing claims on summary judgment); id. at 2291-92 (rejecting an alternative to the adoption of the affirmative defense because under the alternative "[¡judgment calls would often be close, ... and the temptation to litigate would be hard to resist”); id. at 2292 (adopting an affirmative defense because it "would avoid this particular temptation to litigate”). This concern over the cost of excessive litigation would be inconceivable if the Supreme Court intended that sexual harassment cases be exempted in some way from the usual standards of summary judgment. And we can conceive of no basis in law for simply declaring an exception to Rule 56 for certain categories of cases. See St. Mary’s Honor Ctr. v. Hicks, 509 U.S. 502, 524, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (Neither "‘trial courts[n]or reviewing courts should treat discrimination differently from other ultimate questions of fact’ ” (quoting United States Postal Bd. of Governors v. Aikens, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983))). Many cases involve a reasonable care requirement and a preponderance burden yet summary judgment standards are not suspended on account of that. Rule 56 is an integral part of the Federal Rules, not a “shortcut.” See post at 184.