PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LYNNE H. BARRETT,
        *Plaintiff-Appellant,*

v.

THE APPLIED RADIANT ENERGY
CORPORATION,
        *Defendant-Appellee,*

        and

RICHARD L. RAMSEY,
        *Defendant.*

No. 99-2597

LYNNE H. BARRETT,
        *Plaintiff-Appellee,*

v.

THE APPLIED RADIANT ENERGY
CORPORATION,
        *Defendant-Appellant,*

        and

RICHARD L. RAMSEY,
        *Defendant.*

No. 99-2634

Appeals from the United States District Court
for the Western District of Virginia, at Lynchburg.
Norman K. Moon, District Judge.
(CA-98-69)

Argued: December 5, 2000

Decided: February 13, 2001

Before WILKINSON, Chief Judge, TRAXLER, Circuit Judge,
and HAMILTON, Senior Circuit Judge.

---

Affirmed in part, vacated in part, and remanded by published opinion. Chief Judge Wilkinson wrote the opinion, in which Judge Traxler and Senior Judge Hamilton joined.

---

## COUNSEL

**ARGUED:** Gary Mitchell Coates, FRALIN, FEINMAN, COATES & KINNIER, P.C., Lynchburg, Virginia, for Appellant. Bayard Easter Harris, WOODS, ROGERS & HAZLEGROVE, P.L.C., Roanoke, Virginia, for Appellee. **ON BRIEF:** Daniel C. Summerlin, WOODS, ROGERS & HAZLEGROVE, P.L.C., Roanoke, Virginia, for Appellee.

---

## OPINION

WILKINSON, Chief Judge:

Lynne Barrett sued her employer, the Applied Radiant Energy Corporation (ARECO), for sexual harassment under Title VII as well as for violations of state law. The district court dismissed Barrett's state law claims on summary judgment. After a two day trial, the jury found for Barrett on the Title VII claim. The district court, however, ruled for ARECO notwithstanding the verdict because ARECO had satisfied the requirements of the *Faragher/Ellerth* affirmative defense. *Barrett v. Applied Radiant Energy Corp.*, 70 F. Supp.2d 644 (W.D. Va. 1999). Because the district court properly held that Barrett unreasonably failed to take advantage of an effective corporate sexual harassment policy, its judgment with respect to the Title VII claim is affirmed. Barrett's state law assault and battery claim, however, is remanded in light of two intervening decisions by the Virginia Supreme Court. The rest of Barrett's state law claims were properly dismissed.

## I.

ARECO is a Virginia corporation that manufactures flooring. Lynne Barrett has been an ARECO employee since early 1997. ARECO concedes that Richard Ramsey, Barrett's former supervisor and a former vice president at ARECO, sexually harassed Barrett. The harassment began in June 1997, while Barrett and Ramsey were on a business trip to Atlantic City. At dinner, Ramsey told Barrett sexually provocative stories and unsuccessfully attempted to engage her in sexually explicit conversation. Throughout the rest of the trip Ramsey harassed Barrett by propositioning her, grabbing her, and kissing her on the mouth. He also directed vulgar, threatening, and offensive comments to her.

In the months following the Atlantic City trip, Ramsey's harassment continued. He repeatedly propositioned Barrett, showed her pornographic pictures, attempted to engage her in sexually explicit conversation, and touched her without permission. Barrett told a number of individuals of Ramsey's behavior, including at least seven other ARECO employees, the CEO's son, a counselor, a police officer, and two lawyers. At no point, however, did Barrett report Ramsey's conduct to any of ARECO's twelve managers.

ARECO's anti-harassment policy prohibits all forms of harassment. It states that the company does "not tolerate harassment of any of our employees. Any form of harassment related to an individual's race, color, sex, religion, marital status, national origin, citizenship status, age or disability is a violation of this policy." The policy defines sexual harassment as "sexual advances, requests for sexual favors, unwelcome or offensive touching and other verbal, graphic or physical conduct of a sexual nature." The policy also prohibits the posting of calendars, cartoons, posters and other material which have sexual overtones in places where they can be viewed by others. Finally, the policy gives employees the option of approaching any supervisor or manager, stating:

> If you do not feel that the matter can be discussed with your supervisor, you should contact any member of the management team, male or female, with whom you feel comfortable discussing the situation including the President. You may be

> assured that your complaint will be dealt with immediately
> and will be kept as confidential as possible. You will not be
> penalized in any way for reporting a harassment problem.

Barrett knew about this policy and signed a form acknowledging that she received it. Indeed, she consulted the policy after Ramsey started harassing her. Ramsey's behavior continued until November 1997. In November, ARECO independently discovered that Ramsey was harassing Barrett as a part of an investigation of Ramsey's phone use. Upon making this discovery, ARECO immediately retained an outside firm to investigate. As soon as the investigation was complete and Ramsey's harassment confirmed, ARECO fired Ramsey. Less than a week elapsed between ARECO's discovery of Ramsey's harassment and his termination.

On October 2, 1997, Barrett filed a complaint with the Equal Employment Opportunity Commission (EEOC). She subsequently received a right-to-sue letter and filed this action in district court. Barrett's suit asserted various state and federal claims, including violations of Title VII, negligent retention, intentional infliction of emotional distress, and assault and battery.

Although the district court granted ARECO summary judgment on Barrett's state law claims, it denied summary judgment on Barrett's Title VII claim. The district court held that ARECO could not establish, as a matter of law, that it met both prongs of the affirmative defense outlined in *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998). A two day trial followed to determine if ARECO was liable under Title VII. A jury returned a verdict in Barrett's favor, awarding $5,000 in damages. ARECO subsequently renewed its motion for judgment as a matter of law. The district court granted this motion, holding that Barrett's failure to report Ramsey's conduct to ARECO management was unreasonable under the circumstances. *Id.* at 655. Barrett now appeals.

## II.

### A.

The *Faragher/Ellerth* affirmative defense allows an employer to avoid strict liability for one employee's sexual harassment of another. The defense is only available, however, if no adverse tangible employment action was taken by the company. *Faragher*, 524 U.S. at 808; *Ellerth*, 524 U.S. at 765. If this preliminary requirement is met, then the company must prove that it exercised reasonable care in preventing and promptly correcting any sexually harassing behavior. *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. It also must show that "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. Since Barrett does not claim that ARECO took any adverse action against her, ARECO has satisfied the prerequisite to asserting the *Faragher/Ellerth* defense.[1]

### B.

Barrett first argues that because ARECO never did anything more than distribute its anti-harassment policy, it did not exercise reasonable care to prevent and promptly correct any sexually harassing behavior. This argument is incompatible with the law of this circuit. Distribution of an anti-harassment policy provides "compelling proof" that the company exercised reasonable care in preventing and promptly correcting sexual harassment. *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 182 (4th Cir. 1998); *accord Brown v. Perry*, 184 F.3d 388, 396 (4th Cir. 1999). The only way to rebut this proof

---

[1]ARECO cross appeals on jurisdictional grounds. It claims that because Barrett failed to file a complaint with the Virginia Commission on Human Rights, and thus failed to exhaust her state administrative remedies, this court does not have jurisdiction over Barrett's Title VII claim. *See* 42 U.S.C. § 2000e-5(c) (requiring a plaintiff to exhaust both state and federal administrative remedies before filing suit under Title VII). After the briefs in this case were filed, however, this court issued a decision rejecting a materially indistinguishable claim. *See Puryear v. County of Roanoke*, 214 F.3d 514 (4th Cir. 2000).

is to show that the "employer adopted or administered an anti-harassment policy in bad faith or that the policy was otherwise defective or dysfunctional." *Brown*, 184 F.3d at 396 (quoting *Faragher*, 524 U.S. at 808). Barrett claims that ARECO's policy was adopted in bad faith. Barrett, however, presents no evidence to support this claim and we can find none in the record.

There is also no evidence that the policy was in any way defective or dysfunctional. To the contrary, ARECO's policy allowed Barrett to bypass Ramsey by stating that harassment could be reported directly to ARECO's President. The policy also encouraged Barrett to "contact any member of the management team, male or female, with whom" Barrett felt "comfortable discussing the situation." The policy explicitly stated that such complaints would "be dealt with immediately" and would "be kept as confidential as possible." And the policy stated that no employee would "be penalized in any way for reporting a harassment problem." By providing clear direction as to how to report sexual harassment and by including a confidentiality and anti-retaliation provision, ARECO's policy was reasonably calculated to prevent and promptly correct any sexually harassing behavior.

The conclusion that ARECO exercised reasonable care to prevent sexual harassment is buttressed by examining the facts of *Faragher*. In that case, the Supreme Court held that Boca Raton had failed to exercise reasonable care to prevent sexual harassment because it failed to distribute its anti-harassment policy and because the harassed employees and their harassing supervisors were completely separated from higher management. *Faragher*, 524 U.S. at 808. Conversely, in this case ARECO not only distributed the policy, but many of its managers worked in the same building and were readily accessible had Barrett chosen to complain. The Seventh Circuit has held that a company's distribution of an anti-harassment policy and the availability of higher management to receive complaints satisfies the first prong of the affirmative defense. *Shaw v. AutoZone, Inc.*, 180 F.3d 806 (7th Cir. 1999). We have little difficulty, therefore, in concluding that ARECO took reasonable steps to prevent sexual harassment.

Barrett also claims that ARECO did not act promptly to correct Ramsey's behavior. According to Barrett, ARECO did nothing about the sexual harassment even after the company knew about the allega-

tions. Barrett alleges that ARECO must have known that Ramsey was harassing her because she told so many of her co-workers about Ramsey's behavior. Barrett has no evidence, however, that her conversations with her colleagues filtered up to management. And it is undisputed that she never told management herself. *See Shaw*, 180 F.3d at 812 ("Because Shaw never informed AutoZone of Noble's alleged harassment . . . there was nothing for AutoZone to respond to."). Moreover, Barrett's claim is rebutted by ARECO's response after independently uncovering Ramsey's harassment. ARECO immediately launched an investigation and then fired Ramsey within a week of making the discovery and confirming that he had in fact harassed Barrett. ARECO thus took reasonable care to promptly correct any sexually harassing behavior. *See Brown*, 184 F.3d at 398 (immediate investigation and subsequent suspension of harassing employee sufficient to establish that company exercised reasonable care to correct promptly any sexually harassing behavior).

## C.

Barrett further argues that her failure to report Ramsey's harassment to company management was reasonable. She admits that she received a copy of ARECO's sexual harassment policy and even consulted it after Ramsey started harassing her. Barrett also concedes that she never complained to any of ARECO's twelve managers. According to Barrett, she never told any of the managers because she feared retaliation and she doubted that her complaints would be taken seriously. Neither of these explanations, however, justifies Barrett's failure to report Ramsey's harassment.

Barrett's first explanation for her decision not to report Ramsey's behavior is that she feared Ramsey would find out and retaliate against her. According to Barrett, she could not report Ramsey's behavior to ARECO's president, Wayne Zeigler, because Zeigler and Ramsey were good friends. She claims she could not report Ramsey to any of ARECO's managers because they all reported to Zeigler.

This argument too runs contrary to the case law of this circuit. In *Lissau*, we noted that any evidence that the plaintiff failed to utilize the company's complaint procedure "will normally suffice to satisfy [the company's] burden under the second element of the defense."

159 F.3d at 182; *see also Faragher*, 524 U.S. at 808; *Ellerth*, 524 U.S. at 765. A generalized fear of retaliation does not excuse a failure to report sexual harassment. Instead, the law is specifically designed to encourage harassed employees to turn in their harasser because doing so inures to everyone's benefit.

Reporting the harasser benefits the victim by allowing the company to halt future harassment. It benefits others who might be harassed by the same individual, and it benefits the company by alerting it to the disruptive and unlawful misconduct of an employee. Thus, the reporting requirement serves the "primary objective" of Title VII which "is not to provide redress but to avoid harm." *Faragher*, 524 U.S. at 806. By advancing a speculative "fear of retaliation" excuse for remaining silent, Barrett's argument would undermine the primary objective of Title VII and could result in more, not less, sexual harassment going undetected.

Furthermore, Title VII expressly prohibits any retaliation against Barrett for reporting Ramsey's harassment. 42 U.S.C. § 2000e-3(a). It is for this reason that the courts have refused to recognize a nebulous "fear of retaliation" as a basis for remaining silent. *Madray v. Publix Super Mkts., Inc.*, 30 F. Supp.2d 1371, 1375 (S.D. Fla. 1998), *aff'd* 208 F.3d 1290 (11th Cir. 2000) ("An employee's generalized fear of repercussions cannot form the basis for an employee's failure to complain to his or her employer."); *Shaw*, 180 F.3d at 813 (same); *Hylton v. Norrell Health Care of New York*, 53 F. Supp.2d 613, 618 (S.D.N.Y. 1999) (same); *Jones v. USA Petroleum Corp.*, 20 F. Supp.2d 1379, 1386 (S.D. Ga. 1998) (same). And as the district court noted, there was no evidence in this case "that ARECO had ever taken any adverse tangible employment action against complaining employees as that term is defined by the Supreme Court." *Barrett*, 70 F. Supp.2d at 652.

Barrett's second explanation for her decision not to report Ramsey's behavior is that she did not think it would do any good. This argument is based on Barrett's belief that ARECO's senior management was itself guilty of sexual harassment and thus would ignore her complaints. Specifically, Barrett alleges that two of ARECO's twelve managers had harassed other employees and had not been disciplined. ARECO disputes these allegations, and points out in any case that

they relate to events that occurred five years before Barrett started working for ARECO and two years before the anti-harassment policy was adopted. Regardless, we do not think Barrett's allegations are sufficient to relieve her of the obligation to report serious misconduct.

"[T]he law against sexual harassment is not self-enforcing and an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists." *Shaw*, 180 F.3d at 813 (internal quotations omitted). An employee's subjective belief in the futility of reporting a harasser's behavior is not a reasonable basis for failing to take advantage of any preventive or corrective opportunities provided by the employer. *See Lissau*, 159 F.3d at 182.

We cannot accept the argument that reporting sexual harassment is rendered futile merely because members of the management team happen to be friends. Crediting this view would impose an impermissible burden on any company, especially small businesses. People who start and manage small businesses together frequently do so in part because of their pre-existing friendships. Barrett claims that these friendships should relieve an employee of her reporting obligation and effectively impose automatic liability on the employer. Automatic liability, however, is precisely what the Supreme Court sought to avoid in fashioning the *Faragher/Ellerth* affirmative defense. *Faragher*, 524 U.S. at 804.

We acknowledge that discussing such matters as sexual harassment with company managers often puts the harassed employee in an awkward and uncomfortable situation. Nevertheless, this "inevitable unpleasantness" cannot excuse an employee from taking advantage of her employer's complaint procedure. *Shaw*, 180 F.3d at 813. Little can be done to correct this objectionable behavior unless the victim first blows the whistle on it. "[A]n employee's subjective fears of confrontation, unpleasantness or retaliation thus do not alleviate the employee's duty under *Ellerth* to alert the employer to the allegedly hostile environment." *Id.* Allowing subjective fears to vitiate an employee's reporting requirement would completely undermine Title VII's basic policy "of encouraging forethought by employers *and* saving action by objecting employees." *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 764 (emphasis added). Of course, in this case

Barrett cannot even avail herself of the argument that she did not want to discuss Ramsey's harassment with anyone. Indeed, she told a number of friends and colleagues about Ramsey's harassment. If Barrett could bring herself to tell two lawyers, seven colleagues, and the CEO's son about Ramsey's harassment, there is no reason why she could not inform one of the many managers designated to receive a sexual harassment complaint.[2]

### III.

Having addressed Barrett's Title VII claims, all that remains are her state law claims of negligent retention, intentional infliction of emotional distress, and assault and battery.

### A.

Virginia law recognizes a cause of action for negligent retention. *See Phillip Morris, Inc. v. Emerson*, 368 S.E.2d 268 (Va. 1988). In order to prove that ARECO is liable for the negligent retention of Ramsey, Barrett must show that ARECO knew or should have known that Ramsey was dangerous and likely to harm others. *Southeast Apartments Mgmt., Inc. v. Jackman*, 513 S.E.2d 395 (Va. 1999). As discussed above, there is no evidence that ARECO had actual or constructive knowledge of Ramsey's misconduct before independently discovering it in November 1997. Moreover, once Ramsey's behavior was uncovered, ARECO swiftly investigated and terminated Ramsey. Under these circumstances, ARECO was entitled to summary judgment on Barrett's negligent retention claim.

### B.

Barrett's intentional infliction of emotional distress claim is similarly without merit. In order to prove her claim, Barrett must show, *inter alia*, that she suffered severe emotional distress. *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974) (setting out Virginia's four-

---

[2]In light of our conclusion that Barrett unreasonably failed to take advantage of the preventive or corrective opportunities provided by ARECO, we need not reach the question of whether she also unreasonably failed to avoid harm under *Brown*. 184 F.3d at 397.

part test for an emotional distress claim). A showing of severe emotional distress, as opposed to generalized emotional distress, is required because "the injuries in such cases are too hard to determine with any reasonable certainty — are more often assumed than real — and the suit too liable to be wholly speculative. If everyone was allowed damages for injuries to his feelings caused by someone else, the chief business of mankind might be fighting each other in the courts." *Ruth v. Fletcher*, 377 S.E.2d 412, 415 (Va. 1989). This is why "such torts are 'not favored' in the law." *Id.* (quoting *Bowles v. May*, 166 S.E. 550, 555 (Va. 1932)).

In *Russo v. White*, 400 S.E.2d 160, 161-62 (Va. 1991), the Virginia Supreme Court addressed an emotional distress claim where the plaintiff alleged she suffered from "nervousness, sleeplessness, stress and its physical symptoms, withdrawal from activities . . . and lack of concentration at work to the point where she received a reprimand." In rejecting Russo's claim, the Virginia Supreme Court held that "the alleged effect on the plaintiff's sensitivities is not the type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it." *Id.* at 163.

Although Barrett claims that she suffered severe emotional distress, her specific allegations do not reach the high threshold of severe and specific injury required to make out this claim. *Id.* For example, she does not allege any interference with work or outside activities, nor does she allege that she suffered any physical symptoms of stress. Barrett's allegations, even if proven, are thus insufficient to satisfy Virginia's severe emotional distress requirement.

C.

Barrett's final state law claim is for assault and battery. According to the district court, since Ramsey was not acting within the scope of his employment when he harassed Barrett, ARECO could not be held liable for his misconduct. After the district court issued its decision, however, the Virginia Supreme Court decided two cases that speak directly to the scope of employment question raised by Barrett. *See Majorana v. Crown Cent. Petroleum Corp.*, 539 S.E.2d 426 (Va. 2000); *Gina Chin Assoc., Inc. v. First Union Bank*, 537 S.E.2d 573 (Va. 2000). In light of these two recent cases, we shall remand Bar-

rett's assault and battery claim to the district court. We express no opinion on whether these cases should change the decision; this is for the district court or a state court to determine in the first instance.

## IV.

Ramsey's behavior towards Barrett was boorish and unacceptable. The Supreme Court has made clear, however, that the severity of an employee's transgressions are not a basis for automatically imputing liability to the employer. ARECO did everything it was obligated to do under Title VII and thus cannot be held liable for Ramsey's sexually harassing behavior. Barrett's state law claims of negligent retention and intentional infliction of emotional distress were also properly dismissed. The assault and battery claim, however, must be remanded in light of the Virginia Supreme Court's recent decisions concerning respondeat superior liability as it relates to the scope of employment inquiry. Accordingly, the judgment of the district court is affirmed in part, vacated in part, and remanded with instructions to proceed in a manner consistent with this decision.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED*