Billie H. MURRAY, Plaintiff,

v.

CITY OF WINSTON–SALEM, NORTH CAROLINA, Defendant.

No. CIV.1:00–CV–01162.

United States District Court,
M.D. North Carolina.

Feb. 26, 2002.

Romallus O. Murphy, Greensboro, Nc, Denise M. Gold, Winston-Salem, Nc, for Plaintiff.

Gusti W. Frankel, Lisa M. Drabik, Womble, Carlyle, Sandridge & Rice, Winston-Salem, Nc, for Defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

On November 16, 2000, Plaintiff Billie H. Murray ("Plaintiff") filed this action against her employer Defendant City of Winston–Salem ("Defendant" or the "City"), alleging hostile environment sexual harassment, sex discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").

This matter is before the court on a motion for summary judgment by Defendant. For the following reasons, the court will grant Defendant's motion for summary judgment.

## FACTS

On March 2, 1998, Defendant hired Plaintiff to serve as fiscal program coordinator for the City of Winston–Salem. As fiscal program coordinator, Plaintiff served two departments: housing/neighborhood services ("HNS") and housing/neighborhood development ("HND"). Plaintiff reported to and was evaluated by three people: David Brooks (director of HNS), Monica Lett (director of HND), and Joe Sauser (planning development coordinator for HND). Although Plaintiff's office was located within HNS, Plaintiff worked for both HNS and HND.

Beginning in 1999 and during her employment with Defendant, Plaintiff alleges that she was treated poorly by her supervisors and several male and female employees. The substance of Plaintiff's claims, however, focuses on the alleged conduct of Brooks.

On March 20, 2000, Plaintiff and two other City employees, one male and one female, who reported to Brooks met with Allen Joines, assistant city manager and Brooks' supervisor, to lodge complaints about Brooks. All three objected to what they perceived as preferential treatment meted out by Brooks to his administrative assistant, Yvonne Campbell. Plaintiff informed Joines of the following: that she saw Brooks and Campbell kiss on two occasions; that she witnessed Campbell touching and rubbing Brooks' chest in an elevator; that Campbell and Brooks often took long lunches together; that Brooks gave Campbell preferential treatment with

respect to pay and the accumulation of compensatory time off; and that Brooks gave Campbell an opportunity to train for a community service advisor position without first advertising such a position. Plaintiff also complained to Joines that Brooks mistreated her and that Brooks made an inappropriate comment about the jeans Plaintiff chose to wear on casual day. In her deposition Plaintiff alleges that Brooks stated, "If he [Brooks] knew that's the way I [Plaintiff] was going to look in jeans, that he would have approved dress down Friday long before that." (Pl.'s Dep. at 142). Plaintiff also complained about Brooks' managerial style, "being yelled at, being scared that he was going to hit me or something." (Pl.'s Dep. at 285).

On March 23, 2000, Joines hand-delivered a memorandum to Plaintiff, stating that he was taking steps to address her concerns. Joines also wrote, "[I]f these actions continue, please notify me." (Pl.'s Dep. at 302–03; Joines Aff. at ¶ 8, Ex. 1). Joines conducted an investigation and determined that Brooks did not give Campbell preferential treatment and that the "jeans comment" was nothing more than an innocuous compliment. On March 28, 2000, Joines issued a written warning to Brooks in the form of a confidential memorandum.

During her employment with the City, Plaintiff was aware that the City had a sexual harassment policy. On her first day of work, Plaintiff received an employee handbook, which contained the City's sexual harassment policy. The sexual harassment policy defines and prohibits sexual harassment and outlines the grievance procedures. According to the grievance procedure, an employee may present a grievance to the next level of supervision or succeeding higher levels of supervision. Plaintiff admits knowing about the grievance procedure and therefore lodged her complaints with Joines. Despite Joines' request that Plaintiff notify him if Brooks' objectionable conduct continued, Plaintiff admits that she did not contact Joines again.

Plaintiff, however, alleges that after the meeting with Joines, Brooks' treatment of her "intensified." According to Plaintiff, Brooks started questioning her more intently about the budget and started "honing in on every little move or anything" Plaintiff did. (Pl.'s Dep. at 316–17).

In mid-June, 2000, Plaintiff received her annual performance evaluation. Each of her supervisors (Lett, Sauser, and Brooks) submitted individual written comments as part of Plaintiff's evaluation. Plaintiff admits that the comments submitted by Lett (a female) and Sauser were much more negative than those of Brooks.[1] Plaintiff received an overall "acceptable" performance rating.

On July 5, 2000, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In her charge, Plaintiff alleged that Brooks touched her "inappropriately" and "made inappropriate comments of a sexual nature" to her. Plaintiff admits in her EEOC questionnaire that she never men-

---

1. In her deposition, Plaintiff alleged that her evaluation occurred after the City received notice that she had filed an Equal Employment Opportunity Commission ("EEOC") charge, and that, therefore, Lett and Brooks "played good cop, bad cop" in her evaluation. (Pl.'s Dep. at 221–22). Plaintiff's EEOC charge was filed, however, on July 5, 2000.

The City did not receive notice of the charge from the EEOC until later in July, the month after Plaintiff's performance evaluation. Plaintiff first discussed her complaint with the EEOC in May 2000, but produced no evidence that the City knew she had made complaints to the EEOC prior to her performance evaluation.

tioned the alleged touching to Joines because she was embarrassed by it.

In the questionnaire, Plaintiff alleged that Brooks briefly touched her thigh with his thumb twice during a meeting in Candace Dobson's office at which Plaintiff, Brooks, Dobson, and another employee were present. Plaintiff admits that it was very crowded in Dobson's office and that Brooks briefly "twirled" his thumb against her thigh twice. Brooks did not say anything to Plaintiff when he touched her thigh; rather, "he was talking like wasn't nothing wrong." (Pl.'s Dep. at 121). Plaintiff also alleged in the questionnaire that on March 16, 2000, Brooks put his arm around Plaintiff for "a second" because Plaintiff was upset. (Pl.'s Dep. at 109). Neither of these alleged incidents was mentioned to Joines in the March 20, 2000, meeting.

In Plaintiff's deposition on August 23, 2000, Plaintiff also made allegations she did not raise with Joines or include on the EEOC questionnaire. In her deposition, Plaintiff alleged that Brooks made noises like "ummm" and would stare at her when she walked past him. (Pl.'s Dep. at 143). Plaintiff alleges that this happened more than ten times between 1998 and 2000. Plaintiff alleged in her deposition that, on one occasion, she overheard Brooks make comments about his "past sex life" and saw him rotate his pelvis. (Pl.'s Dep. at 149–51, 381–82). Brooks did not make these alleged comments specifically to Plaintiff, but to whomever was around.

On June 25, 2000, Plaintiff took medical leave due to alleged depression. On August 8, 2000, Plaintiff submitted a formal request to the City for leave (retroactive to June 25) pursuant to the Family Medical Leave Act ("FMLA"). The City approved Plaintiff's FMLA request. After Plaintiff's FMLA leave expired, the City granted her five months additional unpaid leave.

Plaintiff returned to work on March 1, 2001.

During her leave, the City corresponded with Plaintiff's doctor about when and under what conditions Plaintiff could return to work. Plaintiff's doctor recommended a change of venue and supervision for Plaintiff upon her return to work. Plaintiff admits that she did not want to return to work for Brooks. Upon returning to work, the City reassigned Plaintiff to the finance department, which is located in a different building from HNS and HND, and Plaintiff reports to a new supervisor. Although Plaintiff states that she feels like her new position is a "step back" because her payroll status changed from exempt to non-exempt and she went from an office to a cubicle, Plaintiff admits that her pay and hours have not changed. (Pl.'s Dep. at 138, 347, and 386). Furthermore, most of Plaintiff's duties have remained the same. Plaintiff also admits that she likes her new supervisor and her new job better. (Pl.'s Dep. at 139, 376–77).

### DISCUSSION

#### A. *Hostile Environment Sexual Harassment*

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering the evidence, all reasonable inferences are to be drawn in

favor of the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

■ Plaintiff argues that Brooks' conduct constituted sexual harassment and created a hostile work environment. In order to establish a hostile environment sexual harassment claim, Plaintiff must establish four elements: "(1) unwelcome conduct; (2) that is based on plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Conner v. Schrader–Bridgeport Int'l, Inc.,* 227 F.3d 179, 192 (4th Cir.2000) (internal citations omitted).

■ The Supreme Court recently stated that:

Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Hence, [a] recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.

*Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 270–71, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (internal citations omitted) (holding that "no one could reasonably believe that [one isolated sexual comment] violated Title VII"). Thus, whether the conduct in question is sufficiently pervasive to create an abusive work environment must be judged from both a subjective and objective perspective. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), *quoted in Conner,* 227 F.3d at 192.

Turning to the facts in the present case, Plaintiff makes the following allegations against Brooks. During her three years of employment with the City: (1) Brooks yelled at Plaintiff during meetings and had an intimidating management style; (2) Brooks gave preferential treatment to an alleged paramour, Campbell; (3) on one occasion Plaintiff overheard Brooks make comments about his past sexual encounters and saw him rotate his pelvis; (4) Plaintiff witnessed two kisses exchanged between Brooks and Campbell; (5) Plaintiff witnessed Campbell rub Brooks' chest on one occasion; (6) Brooks briefly put his arm around Plaintiff after a meeting in which Plaintiff cried; (7) Brooks made a comment about how Plaintiff looked in jeans; (8) Brooks briefly touched Plaintiff's thigh twice with his thumb during a crowded meeting; and (9) Brooks made "ummm" noises and stared at Plaintiff when she walked past him.

■ In order to satisfy the second element of a hostile environment claim, that the harassment was based on Plaintiff's sex, Plaintiff must present evidence to show that "but for the fact of her sex, she would not have been the object of harassment." *Hartsell v. Duplex Prods., Inc.,* 123 F.3d 766, 772 (4th Cir.1997). When construed in the light most favorable to Plaintiff, the only allegations that could be attributable to Plaintiff's gender are the following: the "jeans comment"; Brooks briefly putting his arm around Plaintiff; Brooks touching Plaintiff's thigh twice; and the "ummm" noises and staring as

Plaintiff walked past Brooks.[2] These incidents do not rise to the level of an objectively hostile work environment.

Federal courts have established that Title VII is not intended to be a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *see also Hartsell*, 123 F.3d at 773 ("There simply is no federal guarantee of refinement or sophistication in the workplace."). Thus, "Title VII does not provide a remedy for every instance of verbal or physical harassment in the workplace." *Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 183 (4th Cir. 1998).

Although Plaintiff's allegations demonstrate that Brooks' alleged behavior made HNS an unpleasant place to work, the incidents under all the circumstances are insufficient to satisfy the requirement that the harassment was sufficiently severe or pervasive to create an abusive work environment. First, Plaintiff alleges four incidents (only one of which occurred on more than one occasion) which occurred during the nearly three-year period that Brooks was her supervisor. Isolated incidents that occurred over approximately three years are insufficient to establish a hostile working environment. *See Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir.1996) (stating that a few incidents spread over a lengthy period "alone suggests the absence of a condition sufficiently pervasive to establish Title VII liability"). Second, the two isolated instances of touching alleged by Plaintiff (*e.g.*, putting his arm around Plaintiff and touching

Plaintiff's thigh) are so innocuous that, even combined with the "jeans comment" and the alleged noises/staring, they cannot support an objectively hostile environment claim. *See, e.g., Shaver v. Dixie Trucking Co.*, No. 97–1954, 1999 WL 321388, 1999 U.S.App. LEXIS 9862 at *8–9 (4th Cir. May 21, 1999) (unpublished) (holding that placing a hand on the plaintiff's knee, rubbing the plaintiff's back, and two hugs initiated by the alleged harasser did not constitute a hostile working environment where, at the time of the touching, the alleged harasser did not make any sexually suggestive remarks or touch or attempt to touch plaintiff in any other manner). Thus, based on all the circumstances, Plaintiff's allegations do not rise to the level of creating an objectively hostile working environment.

▬ Assuming, *arguendo*, that Plaintiff established a hostile working environment claim, Defendant is entitled to the affirmative defense outlined in *Faragher*, 524 U.S. at 807–08, 118 S.Ct. 2275, and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764–65, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). An employer may raise the *Faragher* and *Ellerth* affirmative defense to Title VII liability for sexual harassment committed by a supervisor if the employer took no tangible employment action against the employee. *See Faragher*, 524 U.S. at 808, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257. A tangible employment action involves "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsi-

**2.** Plaintiff cannot show that "but for" her gender, Brooks would not have yelled at her or been an intimidating manager, afforded Campbell preferential treatment, kissed Campbell, and spoken about his past sexual encounters. First, Brooks' intimidating managerial style was directed towards both male and female employees. The record indicates that Brooks intimidated at least three male employees. Second, Brooks' alleged preferential treatment of Campbell disadvantaged both sexes equally. Third, Brooks' comments about his past sexual encounters were not directed specifically to Plaintiff or because of Plaintiff's gender.

bilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 761, 118 S.Ct. 2257. If this preliminary requirement is met, the employer must establish: " '(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.' " *Matvia v. Bald Head Island Mgmt., Inc.,* 259 F.3d 261, 266–67 (4th Cir.2001) (quoting *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257).

Plaintiff did not suffer any tangible employment action; therefore, Defendant may assert the *Faragher* and *Ellerth* affirmative defense. Plaintiff was not discharged, demoted, or given a bad performance evaluation by Brooks. The City granted Plaintiff eight months of leave for alleged depression and, upon her doctor's recommendation, offered Plaintiff a different position under a new supervisor with the same salary,[3] same hours, and many of the same duties. Plaintiff also admits that she likes her new supervisor and her new position more than her old position. Furthermore, Brooks took no part in the decision to transfer Plaintiff. *See Brown v. Perry,* 184 F.3d 388, 395 (4th Cir.1999) (stating that an employer is entitled to assert the affirmative defense where there is no evidence that the plaintiff suffered a tangible employment action at the "hands" of the alleged harasser because the alleged harasser "simply took no part in any decision to hire, fire, discharge, transfer or reassign [plaintiff], or in any way to alter her employment benefits"). Plaintiff, however, claims that she feels she was demoted because she now sits in a cubicle rather than in an office and because her position is now non-exempt for the purposes of payment of overtime. Because neither of these arguments is a significant change in Plaintiff's duties or benefits, Defendant is still entitled to assert the *Faragher* and *Ellerth* affirmative defense.

■ As to the first element of the affirmative defense, "dissemination of an effective anti-harassment policy provides compelling proof that an employer has exercised reasonable care to prevent and correct sexual harassment." *Matvia,* 259 F.3d at 268. Plaintiff may rebut this proof by providing evidence that the City implemented the policy in bad faith or was deficient in enforcing the policy. *Id.*

At all times relevant to Plaintiff's complaint, the City maintained a sexual harassment policy that defined and prohibited sexual harassment, contained a complaint procedure allowing employees to bypass their immediate supervisor, and prohibited retaliatory conduct. Plaintiff admits to receiving this policy, knowing about the policy, and using the policy. Thus, the undisputed facts indicate that the City maintained and disseminated an effective anti-harassment policy. *See Matvia,* 259 F.3d at 268 (stating that "[i]n the face of a policy that clearly defines sexual harassment and to whom sexual harassment should be reported, [plaintiff] cannot survive summary judgment"). Furthermore, Plaintiff has presented no

---

**3.** Plaintiff alleges that the City forced her to take a "lower-paying" position. (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. at 16). Plaintiff, however, admits in her deposition that her salary is the same as it was before her leave. (Pl.'s Dep. at 139). Plaintiff also claims that the salary range is lower for her new position than her previous position; however, there is no such evidence in the record to support this allegation. In fact, Plaintiff testified that she did not know if the salary range of her new position was lower than her previous position. (Pl.'s Dep. at 139).

evidence that the City adopted or administered its sexual harassment policy in bad faith. Plaintiff argues that the City is not entitled to the affirmative defense because the City's investigation of Plaintiff's complaint was insufficient. The record, however, indicates that Joines conducted an investigation of the allegations raised by Plaintiff during the March 20 meeting.[4] Joines interviewed Brooks, Campbell, and three other City employees concerning Plaintiff's allegations and asked Brooks to provide documentation of Campbell's pay and compensatory time off compared to other HNS employees. Following this investigation, Joines hand-delivered a memorandum to Plaintiff advising her that he was addressing her concerns and requesting that Plaintiff contact him if Brooks' alleged conduct continued. Joines also issued a written warning to Brooks in the form of a confidential memorandum. Thus, the City exercised reasonable care to address and promptly correct the concerns raised by Plaintiff.

With regard to the second element of the affirmative defense, Plaintiff unreasonably failed to take advantage of the preventative opportunities provided by the City. As stated previously, Plaintiff did not report all of her allegations about Brooks' conduct to the City.[5] "[P]roof that a plaintiff employee failed to follow a complaint procedure 'will normally suffice to satisfy

the employer's burden under the second element of the defense.'" *Brown*, 184 F.3d at 395 (quoting *Faragher*, 524 U.S. at 808, 118 S.Ct. 2275); *see also Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 268 (4th Cir.2001) (holding that plaintiff unreasonably failed to take advantage of the complaint procedure where the plaintiff failed to inform management about sexual harassment). Thus, Defendant has satisfied both elements of the affirmative defense, and the court will grant Defendant's motion for summary judgment with respect to Plaintiff's hostile environment sexual harassment claim.

## B. *Sex Discrimination*

 Plaintiff avers that Brooks' preferential treatment of Campbell constitutes sex discrimination. Preferential treatment on the basis of a consensual romantic relationship between a supervisor and an employee, however, is not sex discrimination. *See Becerra v. Dalton*, 94 F.3d 145, 149–50 (4th Cir.1996) (holding that no sex discrimination exists under Title VII even if a supervisor granted the plaintiff's co-worker job benefits in exchange for sexual favors), *cert. denied*, 519 U.S. 1151, 117 S.Ct. 1087, 137 L.Ed.2d 221 (1997). Sexual favoritism is not sex discrimination because plaintiffs are not prejudiced because of their sex; rather, they are discriminated

**4.** Plaintiff did not report all her complaints about Brooks during the March 20 meeting. Joines, therefore, could investigate only the complaints raised by Plaintiff.

**5.** Plaintiff argues that Joines prevented Plaintiff from telling her story by allegedly ending the meeting after one hour. (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. at 13–14). However, there is nothing in the record to support such an allegation. Before the March 20 meeting ended, Joines allegedly asked Plaintiff and the two other City employees if they had any additional complaints about Brooks, but none of the employees

raised any additional concerns. (Joines Aff. at ¶ 7). Furthermore, in her deposition Plaintiff did not testify that Joines cut her off by ending the meeting. Plaintiff also argues that she did not raise all her complaints about Brooks to Joines because of a general fear of reprisal from Brooks. However, a general fear of reprisal does not excuse Plaintiff's failure to report all of her complaints about Brooks to Joines. *See Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 268 (4th Cir.2001) (stating that "[a] generalized fear of retaliation does not excuse a failure to report sexual harassment").

against because the official prefers the paramour. *Id.* In the present case, Plaintiff alleges that Campbell received preferential treatment from Brooks as a result of her alleged consensual romantic relationship with Brooks. Because the alleged preferential treatment disadvantaged both male and female employees under Brooks, Plaintiff's allegations of sexual favoritism are insufficient to state a claim under Title VII.

## C. *Retaliation*

██ Plaintiff contends that the City retaliated against her for reporting alleged sexual harassment to the City's management and for filing a claim with the EEOC. In order to establish a *prima facie* case for retaliation under Title VII, Plaintiff must show that "(1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action." *Von Gunten v. Maryland,* 243 F.3d 858, 863 (4th Cir. 2001).

██ Because Plaintiff has failed to establish that the City took an adverse employment action against her, Plaintiff's claim for retaliation fails. In order to demonstrate an adverse employment action, Plaintiff must produce "evidence that the challenged discriminatory acts or harassment adversely [a]ffected 'the terms, conditions, or benefits' of the plaintiff's employment." *Von Gunten,* 243 F.3d at 865 (quoting *Munday v. Waste Mgmt. of N. Am., Inc.,* 126 F.3d 239, 243 (4th Cir.1997)).

██ Plaintiff argues that the City's actions adversely affected the terms, conditions, or benefits of Plaintiff's employment in three ways: (1) Plaintiff was not given the option to return to her previous job; (2) Plaintiff's new position was classified as non-exempt; and (3) Plaintiff was forced to give up her office for a cubicle.

First, offering to transfer Plaintiff to a new department does not constitute an adverse employment action. The City consulted with Plaintiff's doctor about when and under what conditions Plaintiff could return to work. In offering Plaintiff a new position and supervisor, the City was merely acting upon the recommendation of Plaintiff's doctor. Nothing in the record indicates that the City did not act in good faith in offering Plaintiff a new position. Furthermore, Plaintiff admits that she did not want to return to work for Brooks.

Second, classifying Plaintiff's new position as non-exempt is not an adverse employment action. In fact, such a change actually benefits Plaintiff because she is now entitled to earn overtime wages. *See Schulze v. Meritor Automotive, Inc.,* 13 Fed.Appx. 89, 91 (4th Cir.2001) (unpublished) (holding that failure to grant the plaintiff exempt status with better pay and benefits did not constitute an adverse employment action and stating that non-exempt status actually benefitted the plaintiff).

Third, relocating Plaintiff's work space from a private office to a cubicle is not sufficient to constitute an adverse employment action. *See, e. g., Place v. Abbott Lab.,* 215 F.3d 803, 810 (7th Cir.2000) (holding that the loss of a cubicle and telephone were "too trivial to amount to an adverse employment action"); *Thomas v. Secretary of Health & Human Servs.,* No. CIV.98–1068–KI, 1999 WL 637214, at *7 (D.Ore.1999) ("The loss of a private office is not a significant enough change in the conditions of employment to be considered an adverse employment action."). Thus, Plaintiff has failed to establish a retaliation claim under Title VII.

## CONCLUSION

For the reasons set forth in this opinion, the court will grant Defendant's motion for summary judgment.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

## ORDER and JUDGMENT

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that Defendant City of Winston–Salem, North Carolina's motion for summary judgment [Doc. # 16] is GRANTED, and this action is DISMISSED with prejudice.